*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2012-223

DECEMBER TERM, 2012

| | |
|---|---|
| In re I.R., S.R. and A.D., Juveniles } | APPEALED FROM: |
| } | |
| } | Superior Court, Addison Unit, |
| } | Family Division |
| } | |
| } | DOCKET NO. 51/52/53-6-10 Anjv |
| | |
| | Trial Judge: Edward J. Cashman |

In the above-entitled cause, the Clerk will enter:

Mother appeals an order of the superior court, family division, terminating her parental rights with respect to her three children, A.D., I.R., and S.R. We affirm.

Mother does not challenge any of the family court's findings, which reveal the following. A.D., the son of mother and her first husband, was born in January 2001. I.R. and S.R., the son and daughter of mother and her third husband, were born in March 2007 and February 2009, respectively. Mother's first husband was a convicted sex offender who was prohibited from contacting children at the time he and mother married. The couple eventually divorced, and the father has had no contact with A.D. since 2005. Mother was briefly married to her second husband in 2004. As was the situation with her first husband, this relationship was violent and abusive in nature. In July 2005, shortly after her divorce from her second husband, mother married her third husband, who suffered from mental disorders that caused erratic and sometimes dangerous behavior. Over the next five years, the children, particularly A.D., suffered from domestic violence in the home.

The Department for Children and Families (DCF) first became involved with the family in February 2006, when a neighbor observed mother's third husband, the father of I.R. and S.R. ("father"), punch and beat A.D. Mother denied the abuse in that instance and in general, even though evidence of the abuse was manifest. In December 2007, father unsuccessfully attempted suicide following a dispute with mother. Shortly thereafter, he asked DCF to remove the children from mother's care, stating that they were not safe because of her abusive behavior.

In March 2008, the family court issued an order finding A.D. and I.R. to be children in need of care or supervision (CHINS). The disposition plan highlighted numerous concerns that revolved around domestic violence perpetrated by both parents and mother's unwillingness to provide accurate information concerning the safety of her children. The case plan called for both parents to participate in services. Among other things, the plan called for mother to resume parent education and participate in counseling to address her emotional problems and her failure to take responsibility for her actions with respect to the children. The primary goal of the plan

was for mother to be able to protect the children from abuse and ensure that they were not placed at risk of further harm. Towards this end, mother was to develop skills to improve her parental care, actively engage with service providers to address the family's problems and create a safe environment for the children, gain skills to understand and cope with her husband's erratic behavior, and learn about the impact of abuse on the children's emotional and physical health. To achieve these goals, the plan provided mother with no less than seventeen different services.

In 2009, S.R. was born, and mother consented to a probate court order giving her mother guardianship over A.D. In June 2010, as the result of continuing domestic violence in the home, the family court transferred custody of the children to DCF, which placed all three children with the maternal grandmother. In September 2010, based upon credible evidence of grandmother's mistreatment of the children, DCF moved the children into foster homes. In October 2010, father attempted suicide by injecting himself with insulin. He survived, but now suffers from irreversible brain damage. That same month, DCF filed petitions to terminate parental rights to each of the children. A forensic evaluation arranged by DCF was completed in January 2011, with follow-up reports in the summer of 2011 and again shortly before the termination hearing, which was held over four days in March 2012. The evaluator initially recommended that neither A.D. nor I.R. be reunited with mother, but expressed guarded optimism that mother could be reunited with S.R. The evaluator, however, later changed her recommendation in the follow-up reports to adoption for all three children.

In its lengthy decision granting DCF's termination petition, the family court considered in detail the testimony of DCF's evaluator, as well as that of mother's expert, who recommended denying the petition, maintaining DCF custody, and providing mother more services to see if she could reach a point where she could care for the children. The court found the testimony of the DCF evaluator to be more credible and consistent than that of mother's expert. The court found A.D. to be an extremely troubled child who suffered from Post Traumatic Stress Disorder (PTSD) and Pervasive Development Disorder (PDD) as the result of a lifetime of humiliating abuse at the hands of his caregivers, including mother. The court noted several psychological defense mechanisms that A.D. had employed over the years to deal with the "terror-filled life" he had endured with mother and her husbands. The court noted that A.D. sees himself as responsible for the abuse he suffered because of mother's refusal to acknowledge that abuse. The court found credible the evaluator's early assessment of A.D. as "a profoundly frightened and disturbed child, living in a confusing and dangerous world where he cannot tell friend from enemy." The court noted, however, that A.D. had made substantial progress while in foster care.

Regarding I.R., the court found that he had also suffered substantial trauma and emotional isolation at the hands of his mother, that he had witnessed repeated episodes of domestic violence in his home, and that mother had repeatedly and consistently refused to interact with him in a caring and empathetic manner. As with A.D., the court noted that I.R. had made substantial progress while in foster care. With respect to S.R., the court acknowledged that manifestations of emotional trauma from living in an abusive home were not as clear, but concluded that, even after six months of services and counseling directed at mother's reunification with S.R., mother had made no progress, and there was an emotional distance between them. The court also found that S.R. had thrived in foster care and was catching up on developmental delays. The court particularly noted S.R.'s strong attachment to I.R., who was

2

with her in the same foster family, and the potential damage to both children should the two be separated.

After examining the statutory best-interests criteria for each child, the court determined that granting DCF's termination petition would serve the children's best interests. In the court's view, after having received extensive services over a six-year period, mother was still at a point where she was unable or unwilling to recognize the abuse to which the children had been subjected while living with her and her husbands. As a result, she did not understand the profound negative psychological impact on the children caused by the abuse and thus would be unable to protect the children from further violence in the future. The court also emphasized the children's significant and immediate need for a stable and safe home environment, which was being provided by the foster families.

On appeal, mother first argues that the termination order must be reversed because the family court mistakenly assumed that it had only two options—termination of parental rights or continued services with a goal of reunification—rather than the several options set forth in 33 V.S.A. § 5318(a). We find no merit to this argument. The sole question for the family court in this proceeding was whether or not to grant DCF's termination petition. The court examined the proper statutory criteria to resolve that question. In making its argument, mother relies upon two sentences in the court's thirty-one-page decision:

> In substance, the choices are to terminate [mother's residual] rights and further penalize the mother who has endured so much abuse from her life partners, but does not place the children in stable and nurturing family settings. Or, the court could deny the petition and leave the children in an unsure family setting for an indeterminate period of time, awaiting their mother's acquisition of skills that six years of intervention have failed to provide her.

In fact, these were the only two options presented to the court by the parties and the only appropriate options in this case. The court used the term "[i]n substance" in recognition of this fact. No party presented an option of transferring custody to a willing relative, for example. Rather, DCF asked for termination, and mother asked for more time to reach a point where she could reunite with her children. The record amply supports the court's termination decision, and the court was not required to, but in fact did, provide an explanation for why it did not choose a less drastic option. See In re G.F., 2007 VT 11, ¶ 20, 181 Vt. 593 (mem.) (noting that "[w]e have repeatedly rejected the claim . . . that the court must consider less drastic alternatives to termination once it has determined the parent to be unfit and unable to resume his or her parental responsibilities").

Mother also argues that the court's order must be reversed because it analyzed the first and fourth best-interests criteria only from the perspective of her being a custodial, as opposed to noncustodial, parent. According to mother, because there was evidence of the continuing parental bond she had with the children and the potential harm that could result from the breaking of that bond, the court was required to assess those criteria from the perspective of her continuing to have a noncustodial role in the children's life, which would weigh against termination of her parental rights. Again, we find no merit to this argument. The first and fourth

best-interests criteria require the court to consider: (1) the children's relationships with the parent and other persons significantly impacting their lives; and (2) whether the parent has played and continues to play a constructive role in the children's welfare. The family court in this instance did exactly that, making numerous findings and conclusions about mother's bonds with each child and the role that she had played and continued to play in the children's lives. As noted, the question before the court was whether to grant DCF's termination petition. The statutory best-interests factors are meant to aid the court in assessing a termination petition. In this case, the court's findings and conclusions overwhelmingly supported its decision to terminate mother's parental rights.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Beth Robinson, Associate Justice

4